JODI SIEGNER, Bar No. 102884
Email Address: jsiegner@deconsel.com
a member of
DeCARLO & SHANLEY,
a Professional Corporation
533 S. Fremont Avenue, Ninth Floor
Los Angeles, California 90071-1706
Telephone (213) 488-4100
Telecopier (213) 488-4180

ATTORNEYS FOR PLAINTIFFS, CARPENTERS SOUTHWEST ADMINISTRATIVE CORPORATION and BOARD OF TRUSTEES FOR THE CARPENTERS SOUTHWEST TRUSTS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| CARPENTERS SOUTHWEST ADMINISTRATIVE CORPORATION, a California non-profit corporation; and BOARD OF TRUSTEES FOR THE CARPENTERS SOUTHWEST TRUSTS,<br><br>　　　　　　Plaintiffs,<br><br>v.<br><br>T&R PAINTING & DRYWALL, doing business as T&R CONSTRUCTION GROUP, a California corporation, also known as TOUCH UP INC.; HAGAI RAPAPORT, an individual; PNINA RAPAPORT, an individual; MARIELA KARIN IAMBURG, an individual; REGISTRAR OF CONTRACTORS STATE LICENSE BOARD; and DOES 1 through 10, inclusive,<br><br>　　　　　　Defendants. | CASE NO.:<br><br>COMPLAINT FOR:<br><br>1. DAMAGES FOR FAILURE TO PAY FRINGE BENEFIT CONTRIBUTIONS AS TO T&R PAINTING & DRYWALL, dba T&R CONSTRUCTION GROUP, a California corporation, aka TOUCH UP INC.;<br><br>2. DEFALCATION OF FIDUCIARY BY THE MISAPPROPRIATION OF DUES HELD AS TO HAGAI RAPAPORT, PNINA RAPAPORT, MARIELA KARIN IAMBURG;<br><br>3. INJUNCTIVE RELIEF AS TO T&R PAINTING & DRYWALL, dba T&R CONSTRUCTION GROUP, a California corporation, aka TOUCH UP INC.; and<br><br>4. DAMAGES FOR FAILURE TO PAY CONTRACTOR'S LICENSE BOND AS TO REGISTRAR OF CONTRACTORS STATE LICENSE BOARD |

///

# JURISDICTION

1. This is a civil action to recover fringe benefit contributions, for defalcation of a fiduciary, and for injunctive relief to compel proper reporting and payment of contributions owed, and to recover as to contractors license cash bond. This action arises and jurisdiction of the court is founded as to Claims One, Two and Three on section 301 of the Labor-Management Relations Act of 1947, as amended ("LMRA"), 29 U.S.C. §185a, and sections 502 and 515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1132 and 1145. The Court has jurisdiction over the Fourth Claim for Relief pursuant to its supplemental jurisdiction under 28 U.S.C. § 1367, which is also brought pursuant to California Business & Professions Code section 7071.5 et seq.

## FIRST CLAIM FOR RELIEF
## (DAMAGES FOR FAILURE TO PAY FRINGE BENEFIT CONTRIBUTIONS AS TO T&R PAINTING & DRYWALL, dba T&R CONSTRUCTION GROUP, a California corporation, aka TOUCH UP INC.; and DOES 1 THROUGH 4)
## PARTIES AND OTHERS

2. CARPENTERS SOUTHWEST ADMINISTRATIVE CORPORATION, a California non-profit corporation ("CSAC") is a non-profit corporation duly organized and existing under and by virtue of the laws of the State of California. CSAC's principal place of business is in the County of Los Angeles, State of California.

3. At all relevant times herein, the BOARD OF TRUSTEES FOR THE CARPENTERS SOUTHWEST TRUSTS were and now are fiduciaries and are duly authorized and acting trustees of those ERISA Trust Funds defined in paragraph six.

4. CSAC and BOARD OF TRUSTEES FOR THE CARPENTERS SOUTHWEST TRUSTS are also authorized agents to act on behalf of the remaining Funds and entities (defined in paragraph nine) with respect to these delinquencies.

CSAC and BOARD OF TRUSTEES FOR THE CARPENTERS SOUTHWEST TRUSTS are sometimes collectively referred to as PLAINTIFFS.

5. The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants named herein as DOES 1 through 10, are unknown to PLAINTIFFS, who therefore sue the defendants by such fictitious names, and PLAINTIFFS will amend this complaint to show their true names and capacities when they have been ascertained.

6. At all relevant times Southwest Carpenters Health and Welfare Trust, Southwest Carpenters Pension Trust, Southwest Carpenters Vacation Trust, and Southwest Carpenters Training Fund, were and are express trusts which exist pursuant to section 302 of the LMRA, 29 U.S.C. §186, and multiemployer plans within the meaning of section 3 of ERISA, 29 U.S.C. §1002.

7. At all relevant times the Construction Industry Advancement Fund of Southern California, the Residential Housing Contract Administration Trust Fund, the Contractors-Carpenters Grievance and Arbitration Trust, and the Contract Administration Trust for Carpenter-Management Relations, were and are express trusts which exist pursuant to section 302 of the LMRA, 29 U.S.C. §186.

8. At all relevant times the Carpenters-Contractors Cooperation Committee ("CCCC"), and Western States Drywall/Lathing Industry Labor-Management Cooperation Committee, Inc., were and are non-profit California corporations which exist pursuant to section 5(b) of the Labor Management Cooperation Act of 1978, 92 Stat. 2020 (1978), for the purposes set forth in section 302(c)(9) of LMRA, 29 U.S.C. § 186(c)(9).

9. CSAC is the administrator of Southwest Carpenters Health and Welfare Trust, Southwest Carpenters Pension Trust, Southwest Carpenters Vacation Trust, and Southwest Carpenters Training Fund, and assignee of the Construction Industry Advancement Fund of Southern California, the Residential Housing Contract Administration Trust Fund, the Contractors-Carpenters Grievance and Arbitration

Trust, the Contract Administration Trust for Carpenter-Management Relations, the Carpenters-Contractors Cooperation Committee, and the Southern California Drywall Industry Fund, the Western States Drywall/Lathing Industry Labor-Management Cooperation Committee, Inc., and the Grievance Obligation Trust Fund (collectively, the "PLANS"), and as such is a plan fiduciary within the meaning of section 3 of ERISA, 29 U.S.C. §1002.

10. The duly authorized and acting trustees or directors of each of the PLANS have also assigned to CSAC all their right, title and interest in and to any and all amounts due and owing to the respective PLANS by the employer as herein alleged.

11. Southwest Regional Council of Carpenters and its affiliated local unions ("UNIONS") affiliated with United Brotherhood of Carpenters and Joiners of America, are labor organizations that are a party to the collective bargaining agreements involved.

12. At all relevant times employer, T&R PAINTING & DRYWALL, doing business as T&R CONSTRUCTION GROUP, a California corporation, also known as TOUCH UP INC., and DOES 1 through 4, ("EMPLOYER") was and is a California corporation and contractor engaged in the construction industry within the jurisdiction of the relevant UNIONS.

13. At all relevant times, the following individuals are listed with the Secretary of State and Contractor's State License Board, as and are officers of EMPLOYER, as follows: HAGAI RAPAPORT, an individual, as Responsible Managing Officer; PNINA RAPAPORT, an individual, as Chief Executive Officer and President; MARIELA KARIN IAMBURG, an individual, as Chief Executive Officer and President; and DOES 5 through 7, ("INDIVIDUALS")

14. At all times herein mentioned, REGISTRAR OF CONTRACTORS STATE LICENSE BOARD; and DOES 8 through 10, ("REGISTRAR OF CONTRACTORS") was, and is, the appointed head of the State of California

Contractors License Board.

## OPERATIVE ALLEGATIONS

15.     On or about the date set forth thereon, EMPLOYER made, executed and delivered to the UNION, a Memorandum Agreement for Residential Drywall dated July 27, 1997 ("MEMORANDUM AGREEMENT 1997"). EMPLOYER also executed and delivered to the UNION, a Southern California Residential Drywall Memorandum Agreement dated October 16, 2001 ("MEMORANDUM AGREEMENT 2001"). True and correct copies are attached hereto, marked respectively as Exhibit "1" and "2" and incorporated herein by reference.

16.     Paragraph 7(a) of the MEMORANDUM AGREEMENT 1997 (executed July 27, 1997) provides as follows:

> In order to protect and preserve, for the employees covered by this Memorandum Agreement, all work theretofore performed by them, and in order to prevent any device or subterfuge to avoid the protection and preservation of such work, it is hereby agreed as follows: If and when the Contractor shall perform any on-site construction work of the type covered by this Agreement, under its own name or under the name of another, as a corporation, company, partnership, or any other business entity, including a joint venture, wherein the Contractor (including its officers, directors, owners, partners or stockholders) exercises either directly or indirectly (such as through family members) any significant degree of ownership, management or control, the terms and conditions of this Agreement will be applicable to all such work.

17.     Paragraph 7, Section 4(a) of the MEMORANDUM AGREEMENT 2001 (executed October 16, 2001) provides as follows:

> Contractor agrees to be bound by the provisions of this Agreement and agrees to execute any necessary documents in order to become signatory to this Agreement, whenever it performs work within the scope of this Agreement as a joint employer,

single employer or alter ego, as defined by the cases interpreting the National Labor Relations Act. Contractor further agrees in such cases to notify the Union of the name or names under which it conducts work covered by this Agreement.

18. The MEMORANDUM AGREEMENT 1997 binds EMPLOYER to the terms and conditions of the Pacific Rim Drywall Association Agreement between Pacific Rim Drywall Association and the United Brotherhood of Carpenters and Joiners of America, and the UNIONS, dated 1997 - 1998, and any renewals or subsequent Pacific Drywall Association Agreements, and the PLANS' agreements and any amendments, modifications, extensions, supplementations or renewals of the PLANS' agreements.

19. MEMORANDUM AGREEMENT 2001 binds EMPLOYER to the terms and conditions of the Southern California Residential Drywall Agreement between the Pacific Rim Drywall Association, and the Southern California Conference of Carpenters, and the UNIONS, dated January 1, 2001, and any renewals or subsequent Southern California Residential Drywall Agreements, and the PLANS' agreements and any amendments, modifications, extensions, supplementations or renewals of the PLANS' agreements.

20. The PLANS are third party beneficiaries of the MEMORANDUM AGREEMENT 1997; the MEMORANDUM AGREEMENT 2001 and Master Labor Agreements.

21. At all relevant times MEMORANDUM AGREEMENT 1997 and MEMORANDUM AGREEMENT 2001 are hereby collectively referred to as "AGREEMENTS").

22. The AGREEMENTS require EMPLOYER to pay fringe benefit contributions at the rates set forth therein for every hour worked by employees performing services covered by the AGREEMENTS, and on account of all compensation paid to employees performing services covered by the AGREEMENTS.

1    23.    The AGREEMENTS require EMPLOYER to make the fringe benefit contributions by way of Employers Monthly Reports ("REPORTS") to the PLANS at their place of business in Los Angeles, California, on or before the 25th day of each month following the month during which the hours for which contributions are due were worked or paid.  Further, the AGREEMENTS specifically provide that the venue of an action to recover delinquent fringe benefit contributions shall be in the County of Los Angeles.

24.    In acknowledging both that the regular and prompt payment of employer contributions is essential to the maintenance of the PLANS, and the extreme difficulty, if not impracticability, of fixing the actual expense and damage to the PLANS when such monthly contributions are not paid when due, the AGREEMENTS provide that the amount of contractual damages to the PLANS resulting from a failure to pay contributions when due shall be presumed to be the sum of $30.00 per delinquency or 10 percent of the amount of the contributions due, whichever is greater.  This amount shall become due and payable to the CSAC as liquidated damages in addition to the unpaid contributions or contributions paid late.

25.    EMPLOYER engaged workers who performed services covered by the AGREEMENTS and who performed labor on works of construction within the jurisdiction of the AGREEMENTS undertaken by EMPLOYER during the term of the AGREEMENTS.

26.    EMPLOYER has failed to pay the fringe benefit contributions in the manner prescribed by the AGREEMENTS, and there is now due and owing the PLANS from EMPLOYER the amounts set forth in Exhibit "3".

27.    The AGREEMENTS require EMPLOYER to pay for the expense of auditing EMPLOYER business records if an audit by the PLANS indicates that EMPLOYER failed to report and pay all contributions.  True and correct copies of Audit Invoice No. 10438 and Audit Invoice No. 20149 are attached as Exhibit "4"

and Exhibit "5".

28. As a result of the failure to pay fringe benefit contributions in the manner prescribed by the AGREEMENTS, EMPLOYER is liable for interest on the unpaid contributions from the first of the month following the date due, at the rate prescribed by the AGREEMENTS.

29. As a result of the failure to pay fringe benefit contributions in the manner prescribed by the AGREEMENTS, EMPLOYER is liable for an amount equal to the greater of interest on the unpaid contributions as prescribed by section 6621 of the Internal Revenue Code of 1954, 26 U.S.C. §6621, or liquidated damages provided for under the AGREEMENTS.

30. It has been necessary for PLAINTIFFS to engage counsel to bring this action to recover the delinquent fringe benefit contributions. Pursuant to the AGREEMENTS and section 502(g)(2) of ERISA, 29 U.S.C. §1132(g)(2), EMPLOYER is liable for reasonable attorneys' fees incurred in litigating this matter.

31. The PLANS have complied with all conditions precedent.

32. CSAC has, concurrently with the filing of this complaint, served a copy of same upon the Secretary of Labor and Secretary of the Treasury.

**SECOND CLAIM FOR RELIEF**
**(DEFALCATION OF FIDUCIARY BY THE MISAPPROPRIATION**
**OF DUES HELD IN FIDUCIARY CAPACITY AS TO**
**HAGAI RAPAPORT; PNINA RAPAPORT; MARIELA**
**KARIN IAMBURG; and DOES 5 THROUGH 7)**

33. PLAINTIFFS reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 32 of their First Claim for Relief and allege a Second Claim for Relief against HAGAI RAPAPORT, an individual; PNINA RAPAPORT, an individual; MARIELA KARIN IAMBURG, an individual; and DOES 5 through 7 ("INDIVIDUALS") for Defalcation of Fiduciary by the

Misappropriation of Vacation Funds Held in Fiduciary Capacity by EMPLOYER as follows:

34. The Vacation Plan (which includes the supplemental dues) was created by a collective bargaining agreement which consists of Trust Agreements and a Master Labor Agreement (collectively, "AGREEMENTS"), between the United General Contractors of California, Inc., the Building Industry Association of Southern California, Inc., the Engineering Contractors' Association, Inc., and the Southern California Contractors Association, Inc., on behalf of their respective eligible members, and the district councils affiliated with the United Brotherhood of Carpenters and Joiners of America, ("UNIONS").

35. The AGREEMENTS obligate EMPLOYER to include the amounts to be paid as Dues to the Vacation Plan in the individual employees taxable income and to submit the amount so deducted monthly to the Vacation Plan.

36. PLAINTIFFS are informed and believe and, based on such information and belief, allege that during the period of February 2011 through January 2014, INDIVIDUALS withheld funds from EMPLOYER'S employees. INDIVIDUALS failed to properly forward the withheld funds to the Vacation Plan, in an amount to be proven at trial. By acting in this manner INDIVIDUALS exercised discretionary authority or control over the assets of the Vacation Plan and were thus a fiduciary.

37. PLAINTIFFS are informed and believe and based on such information and belief, allege that EMPLOYER was, and still is, justly and truly indebted for Dues to said Vacation Plan (as to contributions, only) in an amount as set forth in Exhibit "6."

38. In assuming the obligations to ascertain and report contributions to the Vacation Plan, INDIVIDUALS entered into a fiduciary relationship with the Vacation Plan, and were thereby obligated to pay the Vacation plan all monies withheld from the employees wages.

39. PLAINTIFFS are informed and believe and, based on such information

and belief, allege that by failing to segregate trust property, by misappropriating or failing to account for trust property and by failing to timely tender funds withheld from employees to the Vacation Plan, INDIVIDUALS breached their fiduciary obligations and thus engaged in defalcation.

40. At all times material herein, INDIVIDUALS are and were fiduciaries with respect to the PLANS within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), because they exercised discretionary authority or control respecting management of disposition of assets of the PLANS.

41. By engaging in the acts and omissions described herein, INDIVIDUALS caused assets of the PLANS to inure to the benefit of an employer, namely EMPLOYER, and not to the benefit of participants in the PLANS and their beneficiaries and not for defraying reasonable expenses of the PLANS, these actions were in violation of Section 403(c)(1) of ERISA, 29 U.S.C. §1103(c)(1).

### THIRD CLAIM FOR RELIEF
### (INJUNCTIVE RELIEF AS TO T&R PAINTING & DRYWALL, dba T&R CONSTRUCTION GROUP, a California corporation, aka TOUCH UP INC.; and DOES 1 THROUGH 4)

42. PLAINTIFFS reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 41 of their First and Second Claims for Relief and allege for a Third Claim for Relief as to EMPLOYER for injunctive relief.

43. ERISA section 502(a) provides in part: "A civil action may be brought . . . (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan. . . ."

44. Additionally, section 515 of ERISA (29 U.S.C. § 1145), as amended provides "Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively

bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."

45. EMPLOYER has failed to submit REPORTS and/or remit full contributions to the PLANS for the period of March 2014 through the present, and may fail to furnish REPORTS or remit contributions to the PLANS for subsequent months.

46. As a result of EMPLOYER'S failure to submit reports and/or pay contributions on the dates on which its contributions were due, EMPLOYER may have become indebted to the PLANS for contributions, liquidated damages, and interest.

47. PLAINTIFFS timely notified EMPLOYER by letter of each delinquency and of the assessment of each delinquency, and repeatedly demanded payment of the delinquencies. To date, EMPLOYER has failed to pay the delinquencies owed to the PLANS.

48. EMPLOYER'S failure to promptly pay its delinquencies to the PLANS on the dates on which such contributions were due is a violation of the AGREEMENTS.

49. EMPLOYER'S delinquencies to PLAINTIFFS have occurred from October 2006 and are continuing.

50. EMPLOYER will continue to refuse to submit reports and/or fail to pay contributions to the PLANS and thereby create future unpaid delinquencies during the remaining terms of the AGREEMENTS. Unless EMPLOYER is enjoined from failing to make its contributions and restrained from incurring delinquencies, the PLANS will suffer irreparable injury for which there is no adequate remedy at law since, among other things, the PLANS will be required to bring a multiplicity of actions at law to recover the missing reports and/or the delinquencies as they occur, to the PLANS' great expense and hardship. Further, unless EMPLOYER is so

enjoined, based on experiences with other similarly situated employers, the PLANS have little prospect of ever collecting on the additional delinquencies incurred as such employers frequently petition for bankruptcy, dissolve or otherwise cease doing business as a result of the financial difficulties involved in their delinquencies, and the PLANS are unable thereafter to collect delinquencies thus owing.

## FOURTH CLAIM FOR RELIEF
## (DAMAGES FOR FAILURE TO PAY CONTRACTOR'S LICENSE BOND AS TO REGISTRAR OF CONTRACTORS STATE LICENSE BOARD and DOES 8 THROUGH 10)

51. PLAINTIFFS reallege and incorporate herein by reference each and every allegation contained in paragraphs 1 through 50 of their First, Second and Third Claims for Relief and allege for a Fourth Claim for Relief against REGISTRAR OF CONTRACTORS STATE LICENSE BOARD and DOES 8 through 10, ("REGISTRAR OF CONTRACTORS"), for failure to pay contractor's license cash bond.

52. At all times herein mentioned, REGISTRAR OF CONTRACTORS STATE LICENSE BOARD, ("REGISTRAR OF CONTRACTORS") was, and is, the appointed head of the State of California Contractors License Board.

53. On or about August 25, 2011, EMPLOYER filed with the REGISTRAR OF CONTRACTORS, a Contractor's Cash Deposit, Policy Number T1467L1, in the penal sum of $12,500.

54. The Contractor's Cash Deposit was issued, inter alia, for the benefit of an express trust fund established pursuant to a collective bargaining agreement to which an employer is obligated to make fringe benefit payments.

55. The PLANS were, and are now, express trust funds within the meaning of the Contractors' License Law of the State of California, as amended.

56. PLAINTIFFS' claim against the bond is pursuant to section 7071.11 et

seq. of the Business and Professions Code of the State of California

57. Because EMPLOYER has breached its primary obligation by failing to pay fringe benefit contributions, REGISTRAR OF CONTRACTORS is liable for that obligation to the maximum allowable by law.

WHEREFORE, PLAINTIFFS pray for judgment as follows:

**FOR PLAINTIFFS' FIRST CLAIM FOR RELIEF**
**(DAMAGES FOR FAILURE TO PAY FRINGE BENEFIT**
**CONTRIBUTIONS AS TO T&R PAINTING & DRYWALL,**
**dba T&R CONSTRUCTION GROUP, a California corporation,**
**aka TOUCH UP INC.; and DOES 1 THROUGH 4)**

1. For unpaid contributions in the sum of $1,211.20;
2. For interest and liquidated damages, as provided in the AGREEMENTS;
3. For audit costs;
4. For a statutory amount equal to the greater of the interest on unpaid contributions which were owing as of the time of the filing of the complaint herein (at the rate prescribed by law), or liquidated damages as provided in the AGREEMENTS, in an amount to be determined.

**FOR PLAINTIFFS' SECOND CLAIM FOR RELIEF**
**(DEFALCATION OF FIDUCIARY BY THE MISAPPROPRIATION**
**OF DUES HELD IN FIDUCIARY CAPACITY AS TO**
**HAGAI RAPAPORT; PNINA RAPAPORT; MARIELA KARIN**
**IAMBURG; and DOES 5 THROUGH 7)**

1. That the court determine that INDIVIDUALS are liable for the funds withheld from employees for the Dues in the sum of $368.54; and
2. That the court determine the remaining issues and render judgment for PLAINTIFFS for the amount of debt, plus interest as proven at trial.

## FOR PLAINTIFFS' THIRD CLAIM FOR RELIEF
## (INJUNCTIVE RELIEF AS TO T&R PAINTING & DRYWALL,
## dba T&R CONSTRUCTION GROUP, a California corporation,
## aka TOUCH UP INC.; and DOES 1 THROUGH 4)

1. For issuance of both preliminary and permanent injunctions restraining and enjoining EMPLOYER, for so long as EMPLOYER remains bound to make any payments or contributions to the PLANS, from failing to deliver or cause to be delivered to PLAINTIFFS, no later than the 25th day of the month:

    a. A complete, truthful, and accurate Employer's Monthly Report to Trustees covering all employees of EMPLOYER employed during the previous month under the AGREEMENTS;

    b. A declaration from a responsible employee of EMPLOYER attesting from his or her personal knowledge under pain and penalties of perjury to the completeness, truthfulness, and accuracy for the Monthly Report; and

    c. Check for the full amount owing on the Monthly Report.

2. For payment of the Employers Monthly Reports to Trustees for the months of December 2013, and so long as EMPLOYER remains bound to make any payments of contributions to the PLANS.

3. For submission and payment of the Employers Monthly Reports to Trustees for the months of March 2014 through the present, so long as EMPLOYER remains bound to make any payments of contributions to the PLANS.

///
///
///
///
///

# FOURTH CLAIM FOR RELIEF

# (DAMAGES FOR FAILURE TO PAY CONTRACTOR'S LICENSE BOND AS TO REGISTRAR OF CONTRACTORS STATE LICENSE BOARD and DOES 8 THROUGH 10)

1. For unpaid contributions in the sum of $4,000.00 or the maximum allowed on the bonds, whichever is greater;

2. For interest on the unpaid contributions at the rate prescribed by law.

### AS TO ALL OF PLAINTIFFS' CLAIMS FOR RELIEF:

1. For reasonable attorneys' fees;
2. For costs of this action;
3. For further contributions according to proof; and
4. For such other and further relief as the court deems proper.

Dated: August 25, 2016

DeCARLO & SHANLEY,
a Professional Corporation

By: _____
JODI SIEGNER
Attorneys for Plaintiffs,
CARPENTERS SOUTHWEST ADMINISTRATIVE CORPORATION and BOARD OF TRUSTEES FOR THE CARPENTERS SOUTHWEST TRUSTS